Harry Litman (SBN: 127202)
harry@harrylitman.com
Litman Law Firm
P.O. Box 23717
Pittsburgh, PA 15222
Telephone: (412) 523-1000

Eric H. Jaso (*pro hac vice* admission pending)
NJBN: 476-1999
SPIRO HARRISON & NELSON
363 Bloomfield Avenue
Suite 2C
Montclair, NJ 07042
Telephone: (973) 232-0881
Facsimile: (973) 232-0887
ejaso@shnlegal.com

*Attorneys for Relator*

**FILED**

Oct 25 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ s/ GloriaVocal _____ DEPUTY

ORDERED UNSEALED on **04/14/2026**   s/ andreasar

**SEALED**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,
*ex rel*. AIDAN FORSYTH

               Plaintiff,

    v.

GOLD FLORA LLC, GF DISTRIBUTION
LLC, GOLD FLORA PARTNERS LLC,
BLACK LION FARMS LLC, and LAURIE
HOLCOMB

               Defendants.

Case No. '23 CV 1962 W    MMP

**QUI TAM COMPLAINT**

**FILED UNDER SEAL
UNDER 31 U.S.C. § 3730(b)(2)**

**JURY TRIAL DEMANDED**

On behalf of the United States of America (the "United States" or the "Government"), Plaintiff and Relator Aidan Forsyth ("Relator") files this *qui tam* action against Defendants Gold Flora LLC ("GF"), GF Distribution LLC ("GFD"), Gold Flora Partners LLC ("GFP"), Black Lion Farms LLC ("BLF") (together, the "Corporate Defendants") and Laurie Holcomb (together, "Defendants"), and alleges as follows:

-2-

**INTRODUCTION**

1.     This is an action to recover treble damages, civil penalties and all other remedies on behalf of the United States of America in connection with the Defendants' materially false and fraudulent applications to the Government for loans under the Paycheck Protection Program ("PPP"), in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA").

2.     Pursuant to the FCA, Relator seeks to recover, on behalf of the United States of America, damages and civil penalties arising from false or fraudulent claims for payment that Defendants submitted or caused to be submitted to the Federal Government-funded and/or subsidized PPP loan program.

**SUMMARY OF ALLEGATIONS**

3.     Defendant Laurie Holcomb is the owner and principal of Defendants Gold Flora LLC, GF Distribution LLC, Gold Flora Partners LLC, and Black Lion Farms LLC.

4.     GF, GFD, GFP, and BLF are California Limited Liability Companies based in Costa Mesa, California.

5.     Gold Flora, comprising the Corporate Defendants, is a vertically-integrated, woman-owned and -operated cannabis business.  Gold Flora grows cannabis, manufactures cannabis products, and distributes and sells them at retail outlets throughout Southern California, including at retail stores that it owns and operates.

6.     Although certain States, including California, have legalized the distribution and possession of cannabis for recreational use, it remains listed as a controlled substance by the United States Government.  Accordingly, growing and processing cannabis, manufacturing cannabis-containing products, and distributing and selling such products violates Federal law. Because of the Small Business Administration ("SBA")'s longstanding and general rule

-3-

prohibiting businesses that are engaged in illegal activity from participating in its programs, the SBA prohibits most cannabis businesses from obtaining SBA-backed loans.

7.      In or about 2020, each of the Corporate Defendants submitted applications for SBA-backed "first-draw" PPP loans, which a lender issued.

8.      In or about 2021, GFD submitted an SBA application for a second PPP loan, which a lender issued.

9.      The applications required the applicant's corporate representative to certify that the applicant is not engaged in illegal activity.  The applications also required the representative to acknowledge that the information submitted was material to the Government, to certify that it was true and correct, and to acknowledge that submitting a materially false application would violate federal law.

10.      However, in the Corporate Defendants' applications, the applicants' representative or representatives falsely and fraudulently certified that the businesses were not engaged in illegal activity.  They also expressly acknowledged that this was a material question, and that submitting a materially false application would violate federal law.

11.      In or about 2021, each of the Corporate Defendants sought and obtained forgiveness of the "first-draw" PPP loans.

12.      In or about 2022, GFD sought and obtained forgiveness of its second PPP loan.

13.      Upon information and belief, Holcomb prepared the loan applications and executed them as the corporate represented, or caused and directed another person or person to do so.

14.      In reliance on these false statements and certifications, one or more lenders extended PPP loans to the Corporate Defendants totaling over $1.3 million.

-4-

15. In further reliance on Defendants' false statements and certifications, the lender forgave the PPP loans, the reimbursement for which cost the United States over $1.3 million.

16. Relator files this *qui tam* lawsuit to enable the Government to recover from Defendants the SBA-guaranteed and forgiven monies that were provided to Defendants as the result of their wrongdoing, and bank fees and costs paid by the Government. Relator further seeks to recover treble damages and/or penalties as provided by the FCA.

## JURISDICTION, VENUE, AND SPECIAL REQUIREMENTS

17. This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, under 31 U.S.C. § 3729 of the False Claims Act, and under 28 U.S.C. § 1345, which provides the United States District Courts with original jurisdiction over all civil actions commenced by the United States of America.

18. In addition, the FCA specifically confers jurisdiction upon the United States District Courts under 31 U.S.C. § 3732. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because the Defendants transact business in this District. Among other things, one or more of the Corporate Defendants owns, operates, and/or sells products at retail cannabis dispensaries within this District.

19. Venue is proper in this District under 31 U.S.C. § 3732(a) because Defendants transact business in this District and because the wrongdoing alleged herein took place within this and/or affected this District.

20. In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has filed been filed *in camera* and will remain under seal for a period of at least 60 days and shall not be served on the Defendants until the Court so orders.

-5-

SHN\720621.1

21.  Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and a written disclosure of substantially all material evidence and material information in his possession contemporaneous with the filing of the Complaint. Relator has complied with this provision by serving copies of the Complaint and such disclosure upon the Honorable Randy S. Grossman, United States Attorney for the Southern District of California, and upon the Honorable Merrick B. Garland, Attorney General of the United States.

22.  Relator is not aware that the allegations in this Complaint have been publicly disclosed.  In any event, this Court has jurisdiction under 31 U.S.C. § 3730(e)(4) because the Relator is an "original source" since he has voluntarily provided his information to Government before filing this Complaint, and has knowledge which is both direct and independent of, and materially adds to, any public disclosures to the extent they may exist.

**PARTIES**

23.  Plaintiff-Relator Aidan Forsyth resides at 55 West 8th Street, New York, NY 10011.

24.  Defendant Gold Flora LLC is a privately-held limited liability company incorporated in the State of California on or about November 15, 2016.  Its principal place of business is located at 3165 Red Hill Avenue, Costa Mesa, CA 92626.  GF is a vertically-integrated, woman-owned and -operated cannabis business.

25.  Defendant GF Distribution LLC is a privately-held limited liability company incorporated in the State of California on or about January 2, 2018.  Its principal place of business is located at 3165 Red Hill Avenue, Costa Mesa, CA 92626.  GFD is the distribution company for Gold Flora.

-6-

26. Gold Flora Partners LLC is a privately-held limited liability company incorporated in the State of California on or about February 14, 2017. Its principal place of business is located at 3165 Red Hill Avenue, Costa Mesa, CA 92626. GFD is the retailing company for Gold Flora.

27. Black Lion Farms LLC is a privately-held limited liability company incorporated in the State of California on or about April 27, 2018. Its principal place of business is located at 3165 Red Hill Avenue, Costa Mesa, CA 92626. GFD is the agriculture company for Gold Flora.

28. Defendant Laurie Holcomb resides at 7501 Moonstone Court, Huntington Beach, CA 92648. She is the owner, principal and chief executive officer of Gold Flora and each of the Corporate Defendants.

## GOVERNING LAWS, REGULATIONS, AND CODES OF CONDUCT
**The False Claims Act**

29. Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act. The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010.

30. The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval;" or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim;" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(A), (B), (G). Any person found to have violated these provisions or conspired to

-7-

have violated these provisions is liable for a civil penalty of at least $12,357.00 and up to $25,076.00 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 87 FR 27513, May 9, 2022).

31. The FCA defines the terms "knowing" and "knowingly" to mean that a person (1) "has actual knowledge of the information;" (2) "acts in deliberate ignorance of the truth or falsity of the information"; or acts "in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). The statute provides that "no proof of specific intent to defraud" is required. 31 U.S.C. § 3729(b)(1)(B).

32. The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government – (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

33. The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery. The complaint must be filed under seal without service on any Defendant. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

-8-

34.    In this action, and under well-established precedent, the false and fraudulent nature of Defendants' conduct is informed or measured by their violation of, or failure to comply with, certain statutes and regulations material to the submission of applications for government-subsidized and/or issued small business loans.

**The CARES Act Authorizes Paycheck Protection Program Loans and Economic Injury Disaster Loans and Grants**

35.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Pub. L. 116-136) (the "CARES Act" or the "Act") was enacted in March 2020 to provide emergency financial assistance to individuals and businesses affected by the COVID-19 pandemic. The Act provided the federal Small Business Administration ("SBA") with funding and authority to modify existing loan programs and establish a new loan program to assist small businesses adversely affected by the pandemic.

36.    Section 1102 of the CARES Act authorized the SBA to guarantee up to $349 billion in forgivable 7(a) loans to small businesses for job retention and other expenses.  This program was called the Paycheck Protection Program ("PPP").  In April 2020, Congress authorized over $300 billion to additionally fund the PPP.  In June 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142) was enacted which changed certain provisions of the PPP, including provisions relating to the maturity of loans, the deferral of loan payments, and loan forgiveness.

37.    Under the PPP, eligible businesses could obtain *one* SBA-guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

38.    The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans.  To obtain a PPP loan, a qualifying business (through its authorized

-9-

representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application (SBA Form 2483) required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.

39.    The borrower's authorized representative was required to certify, among other things, the business's average monthly payroll expenses and number of employees. This information was used to calculate the amount of money the business is eligible to be loaned. The applicant was also required submit documentation showing payroll expenses, among other things.

**Federal Law Prohibits Businesses that are Engaged in Illegal Activity from Participating in SBA Programs**

40.    The SBA has long excluded from its loan programs businesses that are engaged in illegal activity. *See, e.g.,* 13 C.F.R. § 120.110 ("Businesses engaged in any activity that is illegal under Federal, State, or local law" ineligible for SBA business loans); 13 C.F.R. 123.201 ("You are not eligible if your business is engaged in any illegal activity."). This exclusion is consistent with longstanding federal policy. *See, e.g., DV Diamond Club of Flint, LLC v. United States SBA*, 459 F. Supp. 3d 943, 961 n.7 (E.D. Mich. 2020) ("[A]ll federal spending statutes -- including the PPP -- necessarily limit spending to lawful pursuits even without specifying that limitation."); *accord* 2 C.F.R. § 200.300 ("The Federal awarding agency must manage and administer the Federal award in a manner so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, Federal Law, and public policy requirements[.]").

41.    Accordingly, well before the CARES Act was enacted and the PPP loan program was instituted, the SBA excluded most cannabis businesses from eligibility to participate in SBA loans and programs, even for businesses operating legally under state or local law.

-10-

Among others, the SBA excluded "Direct Marijuana Business[es]" *i.e.*, "a business that grows, produces, processes, distributes, or sells marijuana or marijuana products, edibles, or derivatives, regardless of the amount of such activity. This applies to personal use and medical use *even if the business is legal under local or state law* where the applicant business is or will be located." SBA Policy Notice re: Revised Guidance on Credit Elsewhere and Other Provisions in SOP 50 10 5(J), Control No. 5000-17057 (Apr. 3, 2018) (emphasis added).

42.    In implementing CARES Act programs, including the PPP loan program, the SBA announced that these longstanding exclusions would apply. "You are ineligible for a PPP loan if . . . [y]ou are engaged in any activity that is illegal under Federal, state or local law[.]" Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program, 13 C.F.R. Part 120, 85 Fed. Reg. 20811 (Apr. 15, 2020).

43.    Even before publishing formal regulatory guidance, SBA officials underscored the broad prohibition in response to inquiries from the cannabis industry and media. SBA public affairs specialist Carol Chastang told one industry journal, "Because federal law prohibits the sale and distribution of cannabis, the SBA does not provide financial assistance to businesses that are illegal under federal law. Businesses that aren't eligible include marijuana growers and dispensers, businesses that sell cannabis products, etc., even if the business is legal under local or state law." C. Neiden, *Cannabis Operators Excluded from SBA's Disaster Assistance During COVID-19 Pandemic,* Cannabis Business Times (Mar. 18, 2020). Similarly, an SBA regional office stated: "With the exception of businesses that produce or sell hemp and hemp-derived products (Agriculture Improvement Act of 2018, Public Law 115-334), marijuana-related businesses are not eligible for SBA-funded services (OMB, 2 C.F.R. § 200.300)." SBA Pacific Northwest Region (Region 10) (@SBAPacificNW), Twitter (Mar. 23, 2020).

-11-

44.     For its part, California defines "commercial cannabis activity" as including "the cultivation, possession, manufacture, distribution, processing, storing, laboratory testing, packaging, labeling, transportation, delivery, or sale of cannabis and cannabis products as provided for in this division[.]" Cal. Bus. & Prof. Code § 26001(l) (Deering, Lexis Advance through the 2023 Extra Session Ch 1, 2023 Regular Session Ch. 2).

45.     Reflecting this longstanding SBA policy, the PPP loan application (SBA Form 2483) required the authorized representative to certify that "[t]he Applicant is not engaged in any activity that is illegal under federal, state or local law."

46.     The application further required the applicant's representative to "certify in good faith . . . that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

47.     PPP loan applications were processed by participating financial institutions, which served as the lenders. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, were transmitted by the lender to the SBA in the course of processing the loan. SBA paid processing fees to lenders.

48.     Once a borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the participating lender, the lender submitted the application to SBA for an SBA loan number and after receiving that number it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

-12-

49.    A borrower was required to use PPP loan proceeds only for certain permissible expenses: payroll costs, interest on mortgages, rent and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expenses within a designated period (between eight and 24 weeks from receiving the proceeds) and uses at least 60% of the proceeds for payroll expenses.

## SPECIFIC FRAUD ALLEGATIONS
### Gold Flora is a Leading Vertically-Integrated Cannabis Producer

50.    Founded in 2017, Gold Flora, comprising the Corporate Defendants, is one of California's largest vertically-integrated cannabis producers.

51.    Gold Flora grows cannabis, manufactures cannabis products, and distributes and sells them at retail dispensaries throughout Southern California, including at retail stores that it owns and operates.

52.    Gold Flora's corporate website emphasizes its position as a longstanding and large cannabis business.  It states: "Gold Flora started with a mission to provide an easy and consistent way for consumers to enjoy cannabis. After years of hard work and a shared passion for the plant, Gold Flora has become a California powerhouse – with cultivation, manufacturing, extraction, distribution, retail and a portfolio of brands that create an array of superior products that make a difference in people's lives."

53.    Gold Flora's social media messaging likewise touts its size and reach:  "At full buildout, Gold Flora Farms is a 620,000 sq. ft. pharmaceutical-grade indoor cannabis campus that's located in Desert Hot Springs, CA. This state-of-the-art cannabis campus is fully-licensed and houses some of the world's leading cannabis brands and companies across all sectors, including Gold Flora."

54.    In early 2023, Gold Flora merged with The Parent Company, another California cannabis business.  The merger announcement stated: "The combined company is expected to

-13-

operate a footprint of 20 retail stores, 12 house brands, 3 distribution centers, and 1 manufacturing facility and 6 cultivation facilities, providing the size and scale to position the combined company as a leader in California. . . . The combined company will have an indoor cultivation canopy of approximately 72,000 square feet, with the opportunity to expand to a further approximately 240,000 square feet, critical to controlling its supply chain and inventory levels while providing consistent high-quality flower, as well as flower-driven products that leverage an exceptional proprietary genetics library to deliver exclusive offerings that align with consumer demands. . . . The combined company would have pro forma revenue of $116.4 million for the nine-month period ended September 30, 2022, with a gross margin of 33%."

55.    Accordingly, Gold Flora is (and was in 2020) by its own description (and hence admission) a leaf-touching, "seed to weed" cannabis business of broad scope and enjoying significant market share in California. As such, its entire business, while legal under California state law, was and remains illegal under Federal law.

56.    Soon after the PPP Loan Program was announced in March 2020, the SBA advised that cannabis companies would be ineligible to participate in the PPP loan program because their activities were considered illegal under federal law. These pronouncements were widely publicized in the industry press.

57.    For example, less than a week after the program was announced, an SBA public affairs officer told a trade publication that "[b]ecause federal law prohibits the sale and distribution of cannabis, the SBA does not provide financial assistance to businesses that are illegal under federal law. . . . Businesses that aren't eligible include marijuana growers and dispensers, businesses that sell cannabis products, etc., even if the business is legal under local

-14-

or state law." C. Neiden, Cannabis Operators Excluded from SBA's Disaster Assistance During COVID-19 Pandemic, Cannabis Business Times, Mar. 18, 2020 (Exh. C).

58.    Likewise, the online trade publication Marijuana Moment reported that the SBA's Pacific Northwest regional office had responded to a cannabis business owner's inquiry on Twitter, stating that "marijuana-related businesses are not eligible for SBA-funded services[,]" citing 2 C.F.R. sec. 200.300. K. Jaeger, Marijuana Businesses are Ineligible for Coronavirus Disaster Relief, Federal Agency Confirms, Marijuana Moment, Mar. 24, 2020 (Exh. D)

59.    SBA regulations confirmed that any business which is "engaged in any activity that is illegal under Federal . . . law" was "ineligible for a PPP loan[.]" 85 Fed. Reg. 20811, 20812 (Apr. 15, 2020) (Exh. E).

60.    Cannabis attorneys publicly advised that "leaf-touching" cannabis businesses that received PPP loans notwithstanding the prohibition should "return the funds immediately" because the Government would view such funds as having been fraudulently obtained. See B. Maciver, Should Cannabis Companies Return PPP Loans?, Cannabis Business Times, Aug. 25, 2020 (Exh. F)

**GF Applies for and Receives a PPP Loan, which is Later Forgiven**

61.    In or about April 2020, Defendants prepared or caused to be prepared an SBA application for a PPP loan on behalf of GF to Celtic Bank Corporation ("CBC"), a federally-insured financial institution based in Salt Lake City, Utah.

62.    SBA Form 2483 required the authorized representative to certify that "[t]he Applicant is not engaged in any activity that is illegal under federal, state or local law."

63.    The application further required the applicant's representative to "certify in good faith . . . that the information provided in this application and the information provided in all

-15-

supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

64.    Upon information and belief, Defendant Holcomb prepared or caused one or more other persons to prepare the Form 2483 for GF.

65.    Defendant Holcomb knew or should have known that GF's cannabis business was illegal under federal law.

66.    Defendant Holcomb falsely stated, or caused another person to state on GF's application, as the company's authorized representative, that GF was not engaged in any activity that is illegal under federal . . . law."

67.    Defendant Holcomb executed GF's PPP loan application as the company's authorized representative, or caused another person to execute the application as such.

68.    Upon information and belief, Defendant Holcomb knowingly falsely certified or knowingly caused to be falsely certified these material statements as the authorized representative of Defendant GF.

69.    In or about April 2020, Defendant Holcomb submitted or caused to be submitted GF's PPP loan application to CBC.

70.    On or about May 1, 2020, in reliance on Defendants' materially false and fraudulent representations and certifications in the loan application, CBC issued PPP Loan #3664717710 to GF in the amount of $287,656.64 (the "710 Loan").

71.    On or about May 21, 2021, the 710 Loan was forgiven in full, causing the United States to reimburse CBC for the full amount plus interest, costs and fees.

-16-

**GFD Applies for and Receives its First PPP Loan, which is Later Forgiven**

72.    In or about April 2020, Defendants prepared or caused to be prepared an SBA application for a PPP loan on behalf of GFD to CBC.

73.    Upon information and belief, Defendant Holcomb prepared or caused one or more other persons to prepare the Form 2483 for GFD.

74.    Defendant Holcomb knew or should have known that GFD's cannabis business was illegal under federal law.

75.    Defendant Holcomb falsely stated, or caused another person to state on GFD's application, as the company's authorized representative, that GF was not engaged in any activity that is illegal under federal . . . law."

76.    Defendant Holcomb executed GFD's PPP loan application as the company's authorized representative, or caused another person to execute the application as such.

77.    Upon information and belief, Defendant Holcomb knowingly falsely certified or knowingly caused to be falsely certified these material statements as the authorized representative of Defendant GFD.

78.    In or about April 2020, Defendant Holcomb submitted or caused to be submitted GFD's PPP loan application to CBC.

79.    On or about May 1, 2020, in reliance on Defendants' materially false and fraudulent representations and certifications in the loan application, CBC issued PPP Loan #3574157704 to GFD in the amount of $395,362.79 (the "704 Loan").

80.    On or about March 9, 2021, the 704 Loan was forgiven in full, causing the United States to reimburse CBC for the full amount plus interest, costs and fees.

-17-

**GFD Applies for and Receives its Second PPP Loan, which is Later Forgiven**

81.     In or about February 2021, Defendants prepared or caused to be prepared an SBA application for a PPP loan on behalf of GFD to CBC.

82.     Upon information and belief, Defendant Holcomb prepared or caused one or more other persons to prepare the Form 2483 for GFD.

83.     Defendant Holcomb knew or should have known that GFD's cannabis business was illegal under federal law.

84.     Defendant Holcomb falsely stated, or caused another person to state on GFD's application, as the company's authorized representative, that GF was not engaged in any activity that is illegal under federal . . . law."

85.     Defendant Holcomb executed GFD's PPP loan application as the company's authorized representative, or caused another person to execute the application as such.

86.     Upon information and belief, Defendant Holcomb knowingly falsely certified or knowingly caused to be falsely certified these material statements as the authorized representative of Defendant GFD.

87.     In or about February 2021, Defendant Holcomb submitted or caused to be submitted GFD's PPP loan application to CBC.

88.     On or about February 24, 2021, in reliance on Defendants' materially false and fraudulent representations and certifications in the loan application, CBC issued PPP Loan #3494568509 to GFD in the amount of $466,882.10 (the "509 Loan").

89.     On or about July 25, 2022, the 509 Loan was forgiven in full, causing the United States to reimburse CBC for the full amount plus interest, costs and fees.

-18-

**GFP Applies for and Receives its First PPP Loan, which is Later Forgiven**

90.    In or about April 2020, Defendants prepared or caused to be prepared an SBA application for a PPP loan on behalf of GFP to CBC.

91.    Upon information and belief, Defendant Holcomb prepared or caused one or more other persons to prepare the Form 2483 for GFP.

92.    Defendant Holcomb knew or should have known that GFP's cannabis business was illegal under federal law.

93.    Defendant Holcomb falsely stated, or caused another person to state on GFP's application, as the company's authorized representative, that GF was not engaged in any activity that is illegal under federal . . . law."

94.    Defendant Holcomb executed GFP's PPP loan application as the company's authorized representative, or caused another person to execute the application as such.

95.    Upon information and belief, Defendant Holcomb knowingly falsely certified or knowingly caused to be falsely certified these material statements as the authorized representative of Defendant GFP.

96.    In or about April 2020, Defendant Holcomb submitted or caused to be submitted GFP's PPP loan application to CBC.

97.    On or about May 1, 2020, in reliance on Defendants' materially false and fraudulent representations and certifications in the loan application, CBC issued PPP Loan #3424597701 to GFD in the amount of $116,610.89 (the "701 Loan").

98.    On or about April 26, 2021, the 701 Loan was forgiven in full, causing the United States to reimburse CBC for the full amount plus interest, costs and fees.

SHN\720621.1

**BLF Applies for and Receives its First PPP Loan, which is Later Forgiven**

99.    In or about April 2020, Defendants prepared or caused to be prepared an SBA application for a PPP loan on behalf of BLF to CBC.

100.    Upon information and belief, Defendant Holcomb prepared or caused one or more other persons to prepare the Form 2483 for BLF.

101.    Defendant Holcomb knew or should have known that BLF's cannabis business was illegal under federal law.

102.    Defendant Holcomb falsely stated, or caused another person to state on BLF's application, as the company's authorized representative, that GF was not engaged in any activity that is illegal under federal . . . law."

103.    Defendant Holcomb executed BLF's PPP loan application as the company's authorized representative, or caused another person to execute the application as such.

104.    Upon information and belief, Defendant Holcomb knowingly falsely certified or knowingly caused to be falsely certified these material statements as the authorized representative of Defendant BLF.

105.    In or about April 2020, Defendant Holcomb submitted or caused to be submitted BLF's PPP loan application to CBC.

106.    On or about May 1, 2020, in reliance on Defendants' materially false and fraudulent representations and certifications in the loan application, CBC issued PPP Loan #3406077705 to BLF in the amount of $41,526.33 (the "705 Loan").

107.    On or about March 10, 2021, the 705 Loan was forgiven in full, causing the United States to reimburse CBC for the full amount plus interest, costs and fees.

-20-

## THE GOVERNMENT HAS BEEN DAMAGED AS A RESULT OF DEFENDANTS' CONDUCT

108.   Defendants' materially false statements have caused the federal government to be defrauded of taxpayer funds in the approximate amount of $1,300,000.00.

## CLAIMS FOR RELIEF

## COUNT I

**False Claims Act:
Presenting or Causing to be Presented False and Fraudulent Claims
31 U.S.C. § 3729(a)(1)(A)**

109.   Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

110.   As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly presented, and caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

111.   As a result thereof, the United States has been damaged in an amount equal to or greater than the amount paid by the United States for such false or fraudulent claims.

## COUNT II

**False Claims Act:
Making or Using False
Records or Statement to Cause Claims to be Paid
31 U.S.C. § 3729(a)(1)(B)**

112.   Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

113.   As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly made, used, or caused to be made or used, false records or statements – *i.e.*, the false representations made or caused to be made by Defendants – material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B).

-21-

SHN\720621.1

114. As a result thereof, the United States has been damaged in an amount equal to or greater than the amount paid by the United States for such false or fraudulent claims.

## COUNT III

### False Claims Act:
### Conspiracy
### 31 U.S.C. § 3729(a)(1)(C)

115. Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

116. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants conspired with and among each other, and with others, to make or present false or fraudulent claims, and performed one or more overt acts to effect the submission and cause the payment of false or fraudulent claims.

117. As a result thereof, the United States has been damaged in an amount equal to or greater than the amount paid by the United States for such false or fraudulent claims.

### PRAYER FOR RELIEF

**WHEREFORE**, Relator, on behalf of the United States Government, demands judgment against the Defendants, ordering that:

A. That Defendants be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729, *et seq.*;

B. That judgment be entered in Relator's favor and against Defendants in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of not less than $12,357.00 or more than $25,076.00 per claim as provided by 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 87 FR 27513, May 9, 2022), to the extent such multiplied penalties shall fairly compensate the United States

-22-

of America for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

C.      That Defendants be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

D.      That judgment be granted for Relator against Defendants for all costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator in the prosecution of this suit; and

E.      That Relator be granted such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Relator hereby demands a trial by jury as to all issues so triable.

DATE:   October 23, 2023                    Respectfully submitted,

                                            **LITMAN LAW FIRM**

                                            By:
                                            Harry Litman
                                            P.O. Box 23717
                                            Pittsburgh, PA 15222
                                            Telephone: (412) 523-1000
                                            harry@harrylitman.com

                                            Eric H. Jaso (*pro hac vice* admission pending)
                                            **SPIRO HARRISON & NELSON**
                                            363 Bloomfield Avenue
                                            Second Floor
                                            Montclair, NJ 07074
                                            Telephone: (973) 232-0881
                                            Facsimile: (973) 232-0887
                                            ejaso@spiroharrison.com

                                            *Attorneys for Relator*

-23-

SHN\720621.1

of America for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

     C.    That Defendants be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

     D.    That judgment be granted for Relator against Defendants for all costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator in the prosecution of this suit; and

     E.    That Relator be granted such other and further relief as the Court deems just and proper.

## JURY DEMAND

Relator hereby demands a trial by jury as to all issues so triable.

DATE:   October 25, 2023

Respectfully submitted,

**LITMAN LAW FIRM**

By: _____

Harry Litman
P.O. Box 23717
Pittsburgh, PA 15222
Telephone: (412) 523-1000
harry@harrylitman.com

Eric H. Jaso (*pro hac vice* admission pending)
**SPIRO HARRISON & NELSON**
363 Bloomfield Avenue
Second Floor
Montclair, NJ 07074
Telephone: (973) 232-0881
Facsimile: (973) 232-0887
ejaso@spiroharrison.com

*Attorneys for Relator*

-23-

SHN\720621.1