ADAM GORDON
United States Attorney
JOSEPH P. PRICE JR.
Assistant U.S. Attorney
Cal. State Bar No. 131689
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
(619) 546-7642
Joseph.Price@usdoj.gov
Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA, *ex rel*. AIDAN FORSYTH,

Plaintiffs,

v.

GOLD FLORA LLC, GF DISTRIBUTION LLC, GOLD FLORA PARTNERS LLC, BLACK LION FARMS LLC, and LAURIE HOLCOMB,

Defendants.

Case No.: 23CV1962-W (MMP)

**UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO LAURIE HOLCOMB'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

Date: October 12, 2026
Judge: Hon. Thomas J. Whelan
Crtrm: 3C

**NO ORAL ARGUMENT PER LOCAL RULES UNLESS FURTHER ORDERED BY THE COURT**

## TABLE OF CONTENTS

PAGE(S)


I. INTRODUCTION AND SUMMARY ARGUMENT ... 1

II. PROCEDURAL BACKGROUND ... 5

III. STATEMENT OF FACTS ... 6

A. The manufacture, distribution, dispensation, and possession of cannabis was illegal under federal law at all relevant times. ... 6

B. Holcomb operated the Gold Flora Companies. ... 7

C. The Gold Flora Companies were engaged in cannabis operations that were illegal under federal law. ... 7

D. Holcomb knew that her companies were engaged in activity that was illegal under federal law and that they were therefore not eligible for PPP loans. ... 8

E. Holcomb knowingly made materially false statements and submitted or caused the submission of knowingly false claims. ... 9

F. Holcomb wrongfully retained or caused the wrongful retention of PPP loan funds owed to the United States. ... 10

G. Holcomb was personally enriched by obtaining PPP loan funds that resulted from her false statements and false claims. ... 11

H. Holcomb's and the Gold Flora's business activities targeted this judicial district. ... 12

IV. ARGUMENT ... 12

A. Standard of Review. ... 12

B. The Paycheck Protection Program. ... 13

C. The False Claims Act. ... 14

D. The Complaint satisfies Rule 9(b) and states sufficient facts under Rule 12(b)(6) to support the allegations that Holcomb violated the False Claims Act. ... 16

1. The Complaint adequately alleges falsity and knowledge. ................ 16

2. The Complaint Adequately Alleges Materiality. ............................... 17

3. The Complaint Adequately Alleges a Reverse False Claim. ............. 19

E. The Complaint adequately alleges a common law claim of unjust enrichment. ........................................................................................ 19

F. Venue Lies in This District. ................................................................. 20

G. Any dismissal should be with leave to amend. ................................... 25

# TABLE OF AUTHORITIES

**CASES** **PAGES**

*Alaska Urological Institute, P.C. v. United States Small Business Administration*, 619 B.R. 689 (D. Alaska 2020) ........ 14

*Allstar Marketing Group, LLC v. Your Store Online*, LLC, 666 F. Supp. 2d 1109 (C.D. Cal. 2009) ........ 20

*Andresen v. International Paper Co.*, 2014 WL 2511283 (C.D. Cal. June 3, 2014) ........ 12

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ........ 12

*Bates v. Mortgage Electronic Registration System, Inc.*, 694 F.3d 1076 (9th Cir. 2012) ........ 13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 12

*City of Royal Oak Retirement System v. Juniper Networks, Inc.*, 880 F.Supp.2d 1045 (N.D. Cal.2012) ........ 13

*Cook County., Ill. v. U.S. ex rel. Chandler,* 538 U.S. 119 (2003) ........ 15

*Deblanco v. Persolve, LLC*, No. 12-CV-2725-H-DHB, 2013 WL 12108659 (S.D. Cal. Feb. 27, 2013) ........ 20

*Eastland Const. Co. v. Keasbey & Mattison Co.*, 358 F.2d 777 (9th Cir. 1966) ........ 24

*Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ........ 25

*In re Baycol Products Litigation,* 732 F.3d 869 (8th Cir. 2013) ........ 15

*In re Vestavia Hills, Ltd. v. U.S. Small Business Administration,* No. 20-cv-01308, 2021 WL 1165038 (S.D. Cal. Mar. 26, 2021) ........ 14

*Johnson v. Riverside Healthcare Systems, LP*, 534 F.3d 1116 (9th Cir. 2008) ........ 12

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ........ 13

*Lee v. Ply*Gem Indus., Inc.,* 593 F.2d 1266 (D.C. Cir. 1979) ........ 24

*Lindh v. Murphy*, 521 U.S. 320 (1997) ........ 24

*National Funding, Inc. v. U.S. Small Business Administration,* 2026 WL 555501 (S.D. Cal. Feb. 27, 2026) ........ 13

*Odom v. Microsoft Corp*., 486 F.3d 541 (9th Cir. 2007) ........ 12

*Pacific Car & Foundry Co. v. Pence,* 403 F.2d 949 (9th Cir. 1958) ........ 23

*Pacific Tobacco Corp. v. American Tobacco Co.,* 338 F. Supp. 842 (D. Or. 1972) ........ 23

*Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491 (9th Cir. 1979) ........ 20

*Sloan v. Pfizer, Inc.,* 2008 WL 4167083 (N.D. Cal. Sept. 8, 2008) ........ 21

*U.S. ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166 (9th Cir. 2006) ........ 15

*U.S. ex rel. Marcus v. Hess*, 317 U.S. 537 (1943) ........ 15

*United States ex rel. Animal Legal Defense Fund (ALDF) v. Holden Farms, Inc.*, 2024 WL 2728451 (D. Minn. May 24, 2024) ........ 18

*United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667 (9th Cir. 2018) .......... 19

*United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890 (9th Cir. 2017) .......... 15

*United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048 (9th Cir. 2001) .......... 12

*United States ex rel. Quesenberry v. JMG Investments, Inc.*, 2026 WL 453469 (C.D. Cal. Jan. 14 2026) .......... 19

United States v. Bellecci, No. 05-cv-1538-LKK, 2008 WL 802367 (E.D. Cal. Mar. 26, 2008) .......... 19

*United States v. Docklight Brands, Inc.*, 2024 WL 4335683 (W.D. Wash. Sept. 27, 2024) .......... 18, 19

*United States v. Fox*, 2023 WL 12075238 (C.D. Ca. March 21, 2023) .......... 19

*United States v. Get Eng'g Corp.*, No. 818CV00277JLSDFM, 2019 WL 4452968 (C.D. Cal. June 20, 2019) .......... 22, 23

*United States v. Hobbs*, 2018 WL 1368325 (N.D. W. Va. Mar. 16, 2018) .......... 22

*United States v. Lang*, 2025 WL 347072 (D. Mont. Dec. 3 2025) .......... 19

*United States v. Universal Fruits & Vegetable Corp.*, 3670 F.3d 829, 836 n. 13 (9th Cir. 2004) .......... 24

*Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977 (9th Cir. 2002) .......... 13

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) .......... 12

*Williams v. Canon*, 32 F. Supp. (C.D. Cal. 1977) .......... 23

**STATUTES**


15 U.S.C. § 645 .......... 14
15 U.S.C § 22 .......... 23
18 U.S.C. § 1001 .......... 14
21 U.S.C. § 801-971 .......... 6
21 U.S.C. § 812(b)(1) .......... 7
21 U.S.C. § 841(a) .......... 7
28 U.S.C. § 1404(a) .......... 20, 22, 23
28 U.S.C. § 1406(a) .......... 22
31 U.S.C. § 3729 .......... 14
31 U.S.C. § 3729(a)(1) .......... 15
31 U.S.C. § 3729(a)(1)(A) .......... 4, 15
31 U.S.C. § 3729(a)(1)(B) .......... 4,15
31 U.S.C. § 3729(a)(1)(G) .......... 4, 15, 19
31 U.S.C. § 3729(b)(1) .......... 16
31 U.S.C. § 3729(b)(2)(A) .......... 16
31 U.S.C. § 3729(b)(4) .......... 16, 17
31 U.S.C. § 3732(a) .......... 20, 23, 24


**RULES**


Fed. R. Civ. P. 9(b) .......... 4, 12
Fed. R. Civ. P. 12(b) .......... 13
Fed. R. Civ. P. 12(b)(3) .......... 20, 21
Fed. R. Civ. P. 12(b)(6) .......... 1,3,12,13, 16, 17


**REGULATIONS**


13 C.F.R. § 120.110 .......... 14
13 C.F.R. § 120.150 .......... 13
21 C.F.R. § 1308.11(d)(31) .......... 7


**OTHER AUTHORITIES**


85 Fed. Reg. .......... 14
1986 U.S.C.C.A.N. 5266 .......... 24
H.R. 7352 .......... 5
Pub. L. No. 116-36, 134 Stat. 281, 286 (2020) .......... 13

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

The United States' Complaint in Intervention ("Complaint") sets forth in methodical detail that, despite knowing her cannabis businesses were ineligible because their operations were illegal under the Controlled Substances Act ("CSA"), Laurie Holcomb obtained five taxpayer-funded Paycheck Protection Program ("PPP") loans for her businesses by falsely certifying in loan applications that they were not engaged in any activity that was illegal under federal law. The Complaint contains more than sufficient facts to support the allegations that Holcomb violated the False Claims Act ("FCA"), including for a reverse false claim by avoiding repayment of loan proceeds, and that she was unjustly enriched. The Complaint also details that Holcomb, and her businesses targeted this district for their operations, including through the distribution and sale of their cannabis products.

Holcomb does not contest that she operated the Gold Flora Companies, that the businesses were engaged in cannabis operations that were illegal under federal law, and that they were therefore not eligible for PPP loans. She also does not dispute that she made knowingly false certifications that (a) the Gold Flora Companies were not engaged in business activities that were illegal under federal law, (b) the businesses that comprised the Gold Flora Companies were not related or affiliated, and (c) the Gold Flora Companies were eligible for PPP loans and for the forgiveness of such loans. Instead, Holcomb's limited argument is that her false statements were not material, that she had no duty to return the loan funds, and that the Complaint insufficiently alleges that she personally was unjustly enriched by her actions. And as a last resort, despite the extensive business activities targeting this district, Holcomb argues that this district is not a proper venue for this action.

Rather than confronting the averments of the Complaint, Holcomb's Motion is grounded in understatements and misstatements of the Complaint and the creation of her own set of diversionary, irrelevant facts and inapplicable legal propositions. But a motion to dismiss under Rule 12(b)(6) only tests the legal sufficiency of the allegations in a the

Complaint, not Holcomb's alternative facts, which should be disregarded for the additional reason that they are presented either without any citation whatsoever or are otherwise inadmissible.[1] Holcomb's rhetoric even devolves to the point that she states, "while there is no evidence in the present record of bad faith, whether the government brought this action here in bad faith or frivolously is a question for the Court." ECF 28-1 at 11, n. 6.

The argument Holcomb presents on materiality—essentially, "other people were speeding too"—is based on her request that the Court take judicial notice of a list from ProPublica of a handful of businesses with "marijuana" or "cannabis" in their names that were somehow able to obtain small PPP loans. As detailed in the accompanying Objection and Motion to Strike Holcomb's Request for Judicial Notice, because she is offering the information reported in the ProPublica list for its truth, i.e., that the listed businesses were indeed engaged in illegal cannabis activities and obtained PPP loans, it is hearsay and inadmissible.

But there is an even more serious and disturbing credibility and candor issue here. Holcomb represents to the Court that, in reality, operating a cannabis business that was illegal under federal law did not disqualify an applicant from obtaining a PPP loan—and that Holcomb's false certifications were therefore not material to obtaining PPP loans and loan forgiveness—because "a review of the judicially noticeable public data on PPP loans reveals that PPP loans were provided to numerous similarly situated businesses." *Id.* at 17:13-15. Additionally, "[t]he Government granting and forgiving loans to such companies cannot be squared with its position that operation of a cannabis business was material to

---

[1] Examples (all presented by Holcomb without citation) include: "From formation, the Gold Flora Companies sought to comply with all legal requirements," ECF No. 28-1 at 2:12-13; "The California government thus deemed the Gold Flora Companies essential and directed them to remain open during the pandemic." *Id.* at 3:6-7; "On April 3, 2020, an intermediary working with Celtic Bank communicated with Holcomb about applying for PPP loans. Despite the apparent nature of the Gold Flora Companies' business, the intermediary—an expert in PPP eligibility requirements—raised no eligibility concerns with Holcomb. Nor did Celtic Bank." *Id.* at 3:18-21; "Celtic Bank did its diligence and flagged no issues." *Id.* at 4:10-11; "[T]he Gold Flora Companies stayed afloat and their employees were paid." *Id.* at 15:17; "The Government's complaint really should have alleged that Holcomb forgot to check a box when the information was otherwise disclosed." *Id.* at 19:15-17.

payment in the 'mine run' of cases. Holcomb operated a small business. Her business, like many other cannabis companies, took PPP loans." *Id.* at 18:4-7. Further, "[b]ecause the Government almost certainly paid and forgave PPP loans to many companies engaged in technically illegal activities, including cannabis companies, here, like in *ADLF* [2024 WL 2728451 (D. Minn. May 24, 2024)], this factor weighs in favor of dismissal." *Id.* at 18:10-12. Holcomb's contention that "many" other businesses engaged in illegal marijuana or cannabis activities were still able to get PPP loans is anchored to her materiality argument and to her Request for Judicial Notice and its accompanying declaration of her counsel with its attachment of a ProPublica list. Holcomb even claims that from the searchable ProPublica loan database, the involvement of these companies in the cannabis industry "was strikingly obvious." *Id.* at 17:13-17. But as the United States' Objection and Motion to Strike reveals, the more complete listed information easily available from the very same source, ProPublica, identifies, among these were people whose proper names include the word "Marijuana." They include the sole proprietor of a single-employee carpet and upholstery cleaning service company who obtained a $20,000 loan, two separate sole proprietors of single-employee beauty salons who each obtained loans of about $20,000, the sole proprietor of a single-employee photography studio who obtained an $18,250 loan, a health and medical insurance carrier that obtained a $24,600 loan, and a political organization in Washington, D.C with eleven employees that obtained a $124,485 loan.[2] And the "cannabis companies" Holcomb refers to include a cannabis museum in Ohio with six employees that obtained a $32,200 loan, a four-employee potato farming company that obtained a $30,000 loan, and a sole practitioner lawyer who obtained a $19,600 loan. Holcomb's Rule 12(b)(6) argument that the Complaint fails to state sufficient facts to state

[2] As for the seventh marijuana business that Holcomb presents as an example, "A Recreational Marijuana Store LLC," and some companies that have cannabis in their names, the United States' reiterates its objection that the ProPublica entry Holcomb offers is inadmissible hearsay. The point Holcomb tries to make in highlighting these business falls flat for the additional reason that she also fails to confess that there is a ten-year statute of limitations for PPP fraud matters and that any *qui tam* actions under the FCA are filed under seal. It is also worth noting that the amount of these loans was as low as $1,060, and that the grand total loan amount these businesses obtained is less than the FCA single damages the United States alleges against Holcomb.

a claim is entirely dependent on an absurd, inaccurate, and misleading representation that whether a business certified it was engaged in illegal activity was not material to the government because the "many" specific, "similarly situated" businesses that Holcomb claims she discovered actually obtained PPP loans despite openly engaging in illegal cannabis activities.[3]

Similarly, Holcomb's venue argument depends entirely on the declaration of a former CFO of the Gold Flora Companies that is so completely lacking in foundation that it conspicuously does not identify when he was CFO (which period the United States suspects did not even begin until after the PPP loans were forgiven and after the business activity upon which he now seeks to comment). And while the CFO declaration is offered in an effort to downplay Holcomb's and the Gold Flora Companies' longstanding, extensive business activities in this district, the declaration, if accepted, does more to confirm that this district is indeed a proper venue for this action.

The Complaint more than adequately states claims upon which relief can be granted under three separate provisions of the FCA, 31 U.S.C. §§ 3729(a)(1)(A), 3729(a)(1)(B), and 3729(a)(1)(G), and for unjust enrichment, and establishes that venue lies in this district. The Complaint also alleges the circumstances constituting fraud with sufficient detail and particularity to satisfy any requirement imposed by Fed. R. Civ. P. 9(b). Because the Complaint alleges facts, which the Court must accept as true, that sufficiently support the

---

[3] Holcomb claims she "has not independently investigation [sic] any of these businesses or whether they in fact violated federal law." ECF No. 28-1 at 17, n. 10. She further claims "[t]hat is not her burden." *Id*. And yet, relying on her counsel's declaration, Holcomb broadcasts the names of small businesses, and in some cases the names of individual business owners, as purported examples of the "many" companies that engaged in illegal activity that nonetheless obtained PPP loans—and that they were "similarly situated" with the Gold Flora Companies, a set of affiliated businesses that obtained five PPP loans for over $1.35 million and touted that "We are Gold Flora, California's most trusted source for an exceptionally enjoyable, consistent cannabis experience." ECF No. 22 at 12:14-15. It is also improper that with, at best, an admitted lack of any due diligence, Holcomb makes in public court filings her erroneous contentions that these businesses and their individual owners are representative of a class of businesses that engaged in illegal activity under federal law and obtained PPP loans fraudulently. Holcomb's Request for Judicial Notice and her references to those small businesses and their individual owners should be stricken.

United States' allegations and exceed pleading requirements in all respects, Holcomb fails to meet her burden, and her motion should be denied in its entirety.

## II. PROCEDURAL BACKGROUND

On October 25, 2023, Relator Aidan Forsyth filed his *qui tam* complaint, under seal, against Defendants Gold Flora LLC, GF Distribution LLC, Gold Flora Partners LLC, Black Lion Farms LLC, and Laurie Holcomb. ECF No. 1.

Holcomb submitted a Verification under penalty of perjury under the law of the State of California, in support of a Verified Petition for Judicial Dissolution and Appointment of Receiver filed on March 27, 2025, in Superior Court for the State of California, County of Los Angeles-West District, Santa Monica Courthouse, Case No. 258MCP00161, that Gold Flora LLC operated solely within the State of California in the cannabis industry. That receivership petition also states that Gold Flora LLC and Black Lion Farms LLC, along with other affiliated entities, could not file for bankruptcy protection due to the illegality of cannabis under federal law.

On August 18, 2025, the United States filed a Petition to Enforce False Claims Act Civil Investigative Demands directing the Gold Flora Companies and Holcomb to comply with seven CIDs for the production of documents and for Holcomb's sworn testimony at oral examination. ECF No. 1 in *United States v. Gold Flora, LLC, et al.*, 25CV2118-WQH-KSC. On April 14, 2026, following the production of documents and scheduling of Holcomb's oral examination, the Court granted the parties' joint motion to dismiss the petition. ECF No. 21 in 25CV2118-JLS-KSC.

On April 13, 2026, the United States filed its Notice of Intervention Election, by which it elected to intervene as to Holcomb only, and elected to decline to intervene as to the other defendants: Gold Flora LLC, GF Distribution LLC, Gold Flora Partners LLC, and Black Lion Farms LLC.[4] ECF No. 19. On July 8, 2026, the United States filed its Complaint in Intervention. ECF No. 22 ("Compl.").

---

[4] Holcomb's Motion repeatedly seeks to give the impression that the United States engaged in some type of unfair surprise or delay in pursuing its remedies. *See* ECF No. 28-1 at 1:17-19 ("T]he Government now, six years later seeks to hold one person liable for payment it welcomed

On July 20, 2026, Relator file a Notice of Voluntary Dismissal as to Gold Flora LLC, GF Distribution LLC, Gold Flora Partners LLC, and Black Lion Farms LLC, only, without prejudice. ECF No. 24. On July 21, 2026, the United States filed a Notice of Consent to Dismissal as to Gold Flora LLC, GF Distribution LLC, Gold Flora Partners LLC, and Black Lion Farms LLC, only, without prejudice. ECF No. 25.

On July 21, 2026, Holcomb and the United States filed a joint motion to extend time for Holcomb to respond to the Complaint. ECF No. 26. On July 22, 2026, the Court granted the parties' joint motion to extend Holcomb's time to respond to the Complaint by no later than Augst 28, 2026. ECF No. 27.

On August 28, 2026, Holcomb filed her Motion to Dismiss or, in the Alternative, to Transfer Venue. ECF No. 28.

## III. STATEMENT OF FACTS

### A. The manufacture, distribution, dispensation, and possession of cannabis was illegal under federal law at all relevant times.

The United States regulates drugs through the CSA (21 U.S.C. §§ 801-971), which places controlled substances, including cannabis, in a schedule. Compl. ¶ 47. The CSA prohibits the manufacture, distribution, dispensation, and possession of cannabis, a Schedule I controlled substance, except for use in federal government-approved research

---

during the height of the pandemic's chaos."); 5:8-13 ("Yet, on July 8, 2026, well over six years after the Gold Flora Companies initially submitted their initial PPP loan requests, levying no allegation that the Gold Flora Companies used funds for any purpose other than payment of their employees, the Government initiated suit—not against the Gold Flora Companies—but against Holcomb personally…."); 17:3-4 ("Now, six years later, the Government claims that the Gold Flora Companies' Legality Certifications were a material term of the bargain."). Holcomb's grievance, including her inaccurate assertion that the United States initiated this suit (*id.* at 5:11-12), is at odds with the fact that Relator filed his *qui tam* complaint in 2023, and that the procedural history includes that the United States had to file a Petition to Enforce seven Civil Investigative Demands issued to Holcomb and the Gold Flora Companies because of their failure to serve responses after the United States granted numerous extensions and they continued to fail to provide responses despite repeated promises to do so. *See* ECF No. 1, *United States v. Gold Flora, LLC, et al.*, 25CV2118-WQH-KSC, ECF No. 1 in that case. Moreover, the statute of limitations in PPP fraud matters is ten years. H.R. 7352, The PPP and Bank Fraud Enforcement Harmonization Act of 2022.

studies. 21 U.S.C. §§ 812(b)(1), (c); 21 C.F.R. § 1308.11(d)(31); Compl. ¶¶ 48, 49. Even though California legalized cannabis for recreational (adult-use) and medicinal use, the manufacture, distribution, dispensation, and possession of recreational (adult-use) and medicinal use cannabis has remained illegal under federal law. 21 U.S.C. §§ 841(a), 844(a); Compl. ¶ 50.

### B. Holcomb operated the Gold Flora Companies.[5]

Holcomb founded Gold Flora LLC and was the principal of, held a majority ownership interest in, and managed the operations of the Gold Flora Companies. *Id.* ¶¶ 2, 12, 14. Holcomb represented on PPP loan applications for Gold Flora LLC, GF Distribution LLC, Gold Flora Partners LLC, and Black Lion Farms LLC, that she had a 77% ownership interest in the applicant, and she identified herself as "Owner" of the applicant. *Id.* ¶¶ 62, 70, 78, 86. Holcomb represented on the Second Draw PPP loan application for GF Distribution LLC that she had a 65% ownership interest in the applicant, and she identified herself as "Manager" of the applicant. *Id.* ¶ 94. For each separate application for the five loans at issue ("Loans 1-5," *id.* ¶ 58), Holcomb certified that she was the authorized representative of the applicant and authorized to make the certifications for such loan applications. *Id.* ¶ 119.

The Gold Flora Companies held themselves out as a "woman-owned," "woman-owned and operated," "female-led, vertically integrated cannabis powerhouse"—all references to Holcomb. *Id.* ¶¶ 55, 56, 57. Holcomb acknowledges in her Motion that she "operated the Gold Flora Companies" and was their CEO. ECF No. 28-1 at 1:10, 1:21.

### C. The Gold Flora Companies were engaged in cannabis operations that were illegal under federal law.

Under Holcomb's management and operation, the Gold Flora Companies were engaged in the cultivation, manufacture, and distribution of cannabis, and had retail stores throughout California, and made their cannabis products available for consumers to

---

[5] The "Gold Flora Companies" is a reference to Gold Flora LLC and its subsidiaries, GF Distribution LLC, Gold Flora Partners LLC, and Black Lion Farms LLC. Compl. ¶ 13.

purchase at locations in the Southern District of California. Compl. ¶¶ 15, 51. Gold Flora LLC held a retail license as a distributor of adult-use (recreational) and medicinal cannabis; GF Distribution LLC served as Gold Flora LLC's distribution arm and held a distributor license for adult-use (recreational), commercial, and medicinal cannabis; Gold Flora Partners LLC held a retail license for the sale of adult-use (recreational) cannabis; and Black Lion Farms LLC held an adult-use (recreational) cannabis cultivation license. *Id.* ¶¶ 11, 17, 18, 19, 51, 52.

The Gold Flora Companies promoted their cannabis operations on their website, declaring, "We are Gold Flora, California's most trusted source for an exceptionally enjoyable, consistent cannabis experience." *Id.* ¶¶ 16, 53. Holcomb's Motion acknowledges that the Gold Flora Companies were in the cannabis business. ECF No. 28-1 at 1:10-11, 2:9-12, 2:23-24, 4:7-8, 18:7.

**D. Holcomb knew that her companies were engaged in activity that was illegal under federal law and that they were therefore not eligible for PPP loans.**

Holcomb knew, including through completing PPP loan applications, that material conditions of obtaining loans, and loan forgiveness, included certifying, *inter alia*, that the applicant was not engaged in any activity that was illegal under federal law, that the information provided in the applications and in all supporting documents and forms was true and accurate in all material respects, and that the applicant was eligible to receive a loan under the SBA rules. Compl. ¶¶ 29, 33, 34, 107, 114, 116. When she signed and made various certifications in applications for Loans 1-5, Holcomb knew that the Gold Flora Companies were engaged at that time in activity that was illegal under federal law. *Id.* ¶ 108. Holcomb was quoted in at least one press article, in describing the Gold Flora Companies' operations, that, "All we do is cannabis, seed to sale"; "We plant the seed, grow the flower and sell it." *Id.* ¶ 106. Holcomb knew, including from being told by Gold Flora Companies' outside auditors, that while the nature of operations of Gold Flora LLC and its subsidiaries was legalized and approved by the State of California, it was considered to be an illegal activity under the CSA. *Id.* ¶ 105.

**E. Holcomb knowingly made materially false statements and submitted or caused the submission of knowingly false claims.**

A material condition of eligibility for a PPP loan was that an applicant was not engaged in any activity that was illegal under federal, state, or local law. To obtain a PPP loan, the applicant, through its authorized representative, certified on the PPP loan application, among other things, that it was not engaged in any activity that was illegal under federal, state, or local law. *Id.* ¶¶ 28, 29. For each separate application for Loans 1-5, Holcomb signed and certified that she was making the representations, authorizations, and certifications that "The Applicant is not engaged in any activity that is illegal under federal, state or local law." *Id.* ¶ 107. Holcomb admits she made those certifications. ECF No. 28-1 at 3:25-4:4. At the time Holcomb signed and made those certifications, she knew that each applicant was engaged at that time in activity that was illegal under federal law and that her certifications were false. Compl. ¶¶ 108, 109.

To obtain a PPP loan, the applicant, through its authorized representative, also had to certify on the PPP loan application, among other things, whether the applicant or any owner of the applicant was an owner of any other business or had common management with any other business, and had to identify such businesses and describe the relationship. *Id.* ¶ 30. For each separate application for Loans 1-5, Holcomb answered "No," and initialed and certified her answer, to the question on the application, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business?" *Id.* ¶ 110. Holcomb admits she made those certifications. ECF No. 28-1 at 3:25-4:4. At the time Holcomb denied that the loan applicants or any owner of the applicants was an owner of any other business or had common management (including a management agreement) with any other business, she had a substantial ownership interest in each of the applicants and knew that her certified answers were false. Compl. ¶¶ 111, 112.

To obtain a PPP loan, and loan forgiveness, the applicant, through its authorized representative, also had to certify on the PPP loan application, among other things, that the

loan funds would be used, or were used, to retain workers of the eligible business, to maintain payroll, or to make mortgage interest payments, lease payments, and utility payments of the eligible business, as specified under PPP rules. *Id.* ¶ 31. At the time Holcomb certified that loan funds for Loans 1-5 would only be used, or had only been used, to pay eligible costs of eligible businesses, she knew her certifications were false. *Id.* ¶¶ 113, 121, 122.

For each separate application for Loans 1-5, Holcomb certified on the application that the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects. At the time Holcomb made such certifications, she knew that the information provided in the applications and in all supporting documents and forms was not true and accurate in all material respects, and that her certifications were false. *Id.* ¶¶ 116, 117.

At the time Holcomb certified in applications for Loans 1-5 that the applicants were eligible to receive loans under SBA rules in effect at the time, she knew that her certifications were false. *Id.* ¶¶ 114, 115, 117. At the time Holcomb submitted applications for forgiveness of Loans 1-5 and certified that the loan funds were used to pay eligible businesses' costs that were eligible for forgiveness and were not used for purposes other than those specified by PPP rules, she knew her certifications were false. *Id.* ¶¶ 122, 123.

**F. Holcomb wrongfully retained or caused the wrongful retention of PPP loan funds owed to the United States.**

Holcomb knew that the Gold Flora Companies were ineligible for PPP loans, that her false certifications caused the Gold Flora Companies to obtain PPP loans, and that PPP loan funds were not spent on permissible wages and costs for eligible businesses. *Id.* ¶¶ 108-117. To avoid the obligation to pay back money that was improperly obtained, Holcomb caused the Gold Flora Companies to retain government funds and avoided having the funds repaid, including through seeking forgiveness of the obligation to pay back the wrongfully obtained PPP loan proceeds. *Id.* ¶¶ 66, 74, 82, 90, 98, 120, 144. As a result, Holcomb improperly

avoided the obligation to pay money to the government and improperly retained, or caused the Glod Flora Companies to retain, government overpayments. *Id.* ¶¶ 144, 145.

**G. Holcomb was personally enriched by obtaining PPP loan funds that resulted from her false statements and false claims.**

As a result of Holcomb's materially false claims and statements in applying for Loans 1-5, and for forgiveness of those loans, the United States paid, and the Gold Flora Companies improperly obtained forgiveness of loans, in the amount of $1,293,830.94. *Id.* ¶¶ 127, 129. The United States' loss as a result of Holcomb's false statements and false claims totaled $1,358,921.13, consisting of $1,293,830.94 in loan forgiveness principal, $50,882.38 in processing fees, and $14,207.81 in lender interest. *Id.* ¶¶ 128, 129. The payments made to the Gold Flora Companies also flowed to Holcomb. *Id.* ¶ 147. As the principal, an officer, an employee, and substantial owner of the Gold Flora Companies, Holcomb directly benefited financially and received monies resulting from the issuance of and forgiveness of Loans 1-5. *Id.* ¶ 130. Holcomb received monies and was unjustly enriched as a result of her false certifications for PPP loans. *Id.* ¶¶ 128, 147-49.

**H. Holcomb's and the Gold Flora's business activities targeted this judicial district.**

A substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district, and Holcomb can be found in this district or resides, transacts or transacted business in this district, or has performed acts proscribed by the FCA in this district. *Id.* ¶ 7. Holcomb founded, and was CEO, President, on the Board of Directors, majority owner, and managed the operations of the Gold Flora Companies, a vertically integrated single-state operator that, through its various subsidiaries, had adult-use (recreational) cannabis cultivation, manufacturing, distribution, and retail operations in California, including in the Southern District of California. *Id.* ¶¶ 11, 12, 16-19, 51.

The Gold Flora Companies arranged to have their cannabis products sold in this district, and invited the public to find their cannabis products at retail locations throughout California, including those located in this district at 10150 Sorrento Valley Road, Suite 110, San Diego, CA; 954 South Santa Fe Avenue, Vista, CA; 7128 Miramar Road, San

Diego, CA 92121; and 3703 Camino Del Rio South, San Diego, CA 92108. *Id.* ¶¶ 16-19, 53.

## IV. ARGUMENT

### A. Standard of Review

Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "This is not an onerous burden." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (citation omitted).

Rule 9(b) also applies because the FCA is an anti-fraud statute. Rule 9(b) provides that "a party must state with particularity the circumstances constituting the fraud or mistake." Rule 9(b)'s purpose is to provide a defendant notice of misconduct alleged to constitute fraud so that she can defendant against the claim. *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 151-52 (9th Cir. 2001).

The Rule 9(b) standard is generally met where the plaintiff alleges "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). However, "[t]he 'time, place, contents, and identity' standard is not a straitjacket for Rule 9(b)." *Andresen v. Int'l Paper Co.*, 2014 WL 2511283, at *5 (C.D. Cal. June 3, 2014) (citation omitted). Moreover, "[w]hile the factual circumstances of the fraud itself must be alleged with particularity, the state of mind—or scienter—of the defendants may be alleged generally." *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007) (citation omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

A complaint meets the demands of Rule 12(b)(6) if it pleads "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). In determining whether an asserted claim can be sustained, "[a]ll of the facts alleged in the complaint are presumed true, and the pleadings are construed in the light most favorable to the nonmoving party." *Bates v. Mortg. Elec. Registration Sys., Inc.*, 694 F.3d 1076, 1080 (9th Cir. 2012).

In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Under narrow circumstances, a court may consider matters outside of the pleadings in resolving a Rule 12(b)(6) motion, such as documents incorporated in a complaint or matters susceptible to judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

If matters outside the pleadings are considered by the court, such as documentary evidence that does more than merely restate what is said in the pleadings, "the motion shall be treated as one for summary judgment . . . and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b). Courts regularly decline to consider declarations and exhibits submitted in support of or opposition to a motion to dismiss, however, if they constitute evidence not referenced in the complaint or not a proper subject of judicial notice. *See City of Royal Oak Retirement Sys. v. Juniper Networks, Inc.*, 880 F.Supp.2d 1045, 1060 (N.D. Cal. 2012)

**B. The Paycheck Protection Program**

"In response to the COVID-19 pandemic, Congress created the Coronavirus Aid, Relief and Economic Security ('CARES') Act. The CARES Act, in relevant part, created the [] PPP, which allowed the Small Business Administration ('SBA'[]) to administer and forgive loans to select businesses impacted by the pandemic. Coronavirus Aid, Relief and Economic Security ('CARES') Act, Pub. L. No. 116-36, 134 Stat. 281, 286 (2020)." *Nat'l Funding, Inc. v. U.S. Small Bus. Admin.*, 2026 WL 555501, at *5-6 (S.D. Cal. Feb. 27, 2026) (emphasis added).

"[T]he SBA eliminated typical underwriting requirements by excusing lenders from complying with 13 C.F.R. § 120.150, which requires the loan applicant to be creditworthy

and sets out a number of qualitative factors that the SBA will consider, and instead allowed lenders to rely on certifications of the borrower." *In re Vestavia Hills, Ltd.*, 2021 WL 1165038, at *16 (S.D. Cal. Mar. 26, 2021) (citation omitted). PPP applicants acknowledged that false certifications on their applications would violate federal law and be punishable by imprisonment and civil fines, including violations of: (i) 18 U.S.C. §§ 1001, 1004, 3571; (ii) 15 U.S.C. § 645; and (iii) the FCA, 31 U.S.C. §§ 3729 et seq.

The CARES Act granted the SBA emergency rulemaking authority. Pursuant to its emergency rulemaking authority, the SBA published multiple interim final rules concerning the PPP. *See Alaska Urological Inst., P.C. v. United States Small Bus. Admin.*, 619 B.R. 689, 693 (D. Alaska 2020).

Not all businesses were eligible for PPP loans. The First Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Plan, 85 Fed. Reg. 20,811, 20,812 (Apr. 15, 2020), "explain[ed] that some businesses are ineligible even if they meet the eligibility requirements." *Alaska Urological Inst.*, 619 B.R. at 694. Those businesses that were ineligible included those that "are engaged in any activity that is illegal under Federal, state, or local law." *Id.* at 695.

The SBA has long excluded from its loan programs businesses engaged in illegal activity. E.g., 13 C.F.R. § 120.110 ("Businesses engaged in any activity that is illegal under Federal, State, or local law" are ineligible for SBA business loans). The SBA issued guidance well before the CARES Act that it excludes from its loan programs "a business that grows, produces, processes, distributes, or sells marijuana or marijuana products, edibles, or derivatives, regardless of the amount of such activity. . . . This applies to recreational use and medical use even if the business is legal under local or state law where the Applicant is or will be located." SBA Policy Notice re: Revised Guidance on Credit Elsewhere and Other Provisions in SOP 50 10 5(J), Control No. 5000-17057 (Apr. 3, 2018) (emphasis added).

**C. The False Claims Act**

The FCA is the government's primary fraud fighting tool and provides the

government with its main means of recovery for frauds against the public fisc. In enacting the FCA, "Congress wrote expansively, meaning 'to reach all types of fraud, without qualification, that might result in financial loss to the Government.'" *Cook Cty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 129 (2003) (citation omitted).

FCA liability can be premised upon a fraud-in-the-inducement theory. *See U.S. ex rel. Marcus v. Hess*, 317 U.S. 537 (1943); *United States ex rel. Campie v. Gilead Scis.*, Inc., 862 F.3d 890, 902 (9th Cir. 2017); *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1173-74 (9th Cir. 2006). Under this theory, FCA liability extends "to each claim submitted to the government under a contract, when the contract or extension of the government benefit was originally obtained through false statements or fraudulent conduct." *Campie*, 862 F.3d at 902. "[C]laims for payment . . . under a contract initially induced by fraud do not have to be false or fraudulent in and of themselves . . . ." *In re Baycol Prod. Litig.*, 732 F.3d 869, 876 (8th Cir. 2013). They are "false or fraudulent" for purposes of the FCA because the "contract or extension of government benefit was originally obtained through false statements or fraudulent conduct." *Hendow*, 461 F.3d at 1173 (emphasis added). Accordingly, in a fraudulent inducement FCA case, the focus is "on the false or fraudulent statements which induced the government to enter into the contract at the outset." *In re Baycol Products Litig.*, 732 F.3d at 876.

The FCA provides that any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," 31 U.S.C. § 3729(a)(1)(B), or who knowingly conceals, avoids, or improperly decreases an obligation to pay or transmit money or property to the United States, 31 U.S.C. § 3729(a)(1)(G) (a "reverse false claim"), is liable to the United States for civil penalties "plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1).

"Knowingly" under the FCA is defined to mean "that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of

the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1). No proof of specific intent to defraud is required. *Id.*

The FCA defines a "claim" to mean "any request or demand, whether under a contract or otherwise, for money or property" which is "presented to an officer, employee, or agent of the United States." 31 U.S.C. § 3729(b)(2)(A). Alternatively, it is "any request or demand, whether under a contract or otherwise, for money or property" which is "made to a contractor, grantee, or other recipient" of federal funds, if the money is spent on behalf of the Government or to advance a Government program or interest, and if the Government "provides or has provided any portion of the money or property requested or demanded," or "will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." *Id.*

"Material" means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. §3729(b)(4).

**D. The Complaint satisfies Rule 9(b) and states sufficient facts under Rule 12(b)(6) to support the allegations that Holcomb violated the False Claims Act.**

The United States has adequately alleged that Holcomb fraudulently induced the government to provide the Gold Flora Companies with pandemic relief funds. Specifically, as the many Complaint citations above make clear, the Complaint includes more than sufficient facts to support the allegations that Holcomb knowingly made false and fraudulent material statements concerning: (a) the Gold Flora Companies' engagement in illegal activity; (b) the affiliation of the companies that comprised the Gold Flora Companies; and (c) the planned and actual use of PPP funds for businesses ineligible for the loans.

**1. The Complaint adequately alleges falsity and knowledge.**

There is no dispute regarding falsity or scienter. As detailed above with specific citations to the Complaint, abundant facts allege that: (a) Holcomb knew the Gold Flora Companies were engaged in cannabis operations that were illegal under federal law and

were therefore not eligible for PPP loans; and (b) Holcomb made knowingly false certifications that (i) the Gold Flora Companies were not engaged in business activities that were illegal under federal law, (ii) the businesses that comprised the Gold Flora Companies were not related or affiliated, and (iii) the companies were eligible for PPP loans and for loan forgiveness. Holcomb also admits in her Motion that she "operated the Gold Flora Companies" and was their CEO (ECF No. 28-1 at 1:10, 1:21), that the Gold Flora Companies were in the cannabis business (*id.* at 1:10-11, 2:9-12, 2:23-24, 4:7-8, 18:7), and that she made each of the subject certifications. (*id*. at 3:25-4:4.

**2. The Complaint Adequately Alleges Materiality.**

The Complaint contains abundant factual allegations that Holcomb's false and fraudulent statements were material and were of the type to have "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). The Complaint sets forth in detail, as discussed above, how Holcomb's knowingly false statements regarding required conditions of eligibility resulted in the Gold Flora Companies obtaining five PPP loans and forgiveness of loans.

Holcomb's Rule 12(b)(6) motion is predicated entirely on her materiality argument. But Holcomb's position on materiality cannot hold because it is anchored by unsupported contentions that the government did not care if a PPP loan applicant was engaged in illegal activity and that the government was in the practice of routinely approving and forgiving PPP loans for cannabis businesses whose operations were considered illegal under the CSA. As addressed in the United States' Objection and Motion to Strike Request for Judicial Notice, those contentions are based wholly on Holcomb's recklessly inaccurate presentation about other PPP loan recipients. Holcomb argues that loan applicants' false certifications of illegality were not material because Holcomb discovered seven marijuana businesses, and 33 cannabis businesses, cited in her Request for Judicial Notice, that were in the cannabis industry and nonetheless were allowed to obtain PPP loans and forgiveness of those loans. But in truth, the more complete picture from the same source Holcomb cited, ProPublica, indicates that at least six of the seven "marijuana" businesses were not operating in that

industry and that several of the "cannabis" businesses weren't either. Holcomb even uses individuals whose first name is "Marijuana" as her examples.

In support of Holcomb's argument that cannabis operators' false statements in PPP loan applications were not material, she also points to the matter involving a company called Docklight Brands. Holcomb contends that the "pre-litigation settlement" of Docklight does not demonstrate materiality—particularly when juxtaposed with the ProPublica list of cannabis companies that she claims proves that the United States paid and forgave PPP loans fully knowing that cannabis company borrowers were in violation of federal law. Holcomb cites the Docklight matter as *United States ex rel. Sidesolve LLC v. Docklight Brands, Inc*. No. 2:22-cv-01371-JNW (W.D. Wash.) and asserts it "appears to have settled with no meaningful litigation." ECF No. 28-1 at 17:7-11. Holcomb's representations are not accurate. The correct citation is *United States ex rel. Sidesolve LLC v. Docklight Brands, Inc.*, 2024 WL 4335683 (W.D. Wash. Sept. 27, 2024). Like here, a relator filed a qui tam action against a cannabis company, alleging it violated the FCA when it obtained a PPP loan by representing to the government that it was not engaged in illegal activity under federal law. It is correct that a settlement was reached, but the United States moved for entry of judgment because Docklight had filed for receivership. The receiver contested the United States' motion for entry of judgment. "Having considered the record, the law, and the parties' briefing," the court granted the motion and directed that judgment in the amount of $989,438.00 be entered in the United States' favor. Id at *1.

Holcomb parlays her faulty presentation about other PPP loan recipients with a misplaced reliance on an out-of-circuit district court case, *United States ex rel. Animal Legal Def. Fund v. Holden Farms, Inc.*, 2024 WL 2728451 (D. Minn. May 24, 2024) ("ALDF"). Even if Holcomb's claim about other cannabis companies obtaining PPP loans were correct, ALDF is fundamentally at odds with the law in the Ninth Circuit and with settled SBA rules.

The rationale in ALDF, in which the court characterized PPP loans as "gifts," also departs significantly from the reasoning in multiple district court cases in this circuit that arise from allegations that a PPP borrower falsely certified on loan applications that their

business was not engaged in activity that violated local, state or federal law. *See, e.g., Docklight*, 2024 WL 2728451; *United States v. Fox*, 2023 WL 12075238, at *1, 11 (C.D. Cal. March 21, 2023) (denying motion to dismiss amended complaint alleging that defendant violated FCA by falsely certifying on PPP application that business activity was not in violation of federal law when the intention was to use funds to sell recreational or medical marijuana); *United States v. Lang*, 2025 WL 347072 (D. Mont. Dec. 3, 2025) (granting default after finding United States pled facts establishing that defendant violated the FCA on behalf of himself and his companies by falsely certifying eligibility for PPP loans when operating a marijuana dispensary).

**3. The Complaint Adequately Alleges a Reverse False Claim.**

The reverse false claims provision of the FCA, 31 U.S.C. § 3729(a)(1)(G), "is designed to cover Government money or property that is knowingly retained by a person even though they have no right to it." *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 676 (9th Cir. 2018). The United States' ability to pursue a reverse false claim has been recognized in PPP fraud matters. S*ee United States ex rel. Quesenberry v. JMG Investments, Inc.*, 2026 WL 453469 (C.D. Cal. Jan. 14, 2026) (summary judgment granted in the United States' favor, entitling it to its full measure of requested damages on the reverse FCA claim).

The Complaint states sufficient facts to allege that in order to avoid the obligation to pay back money that was improperly obtained, Holcomb caused the Gold Flora Companies to retain government funds and avoided having the funds repaid, including through seeking forgiveness of the obligation to pay back the wrongfully obtained PPP loan proceeds. *Id*. ¶¶ 66, 74, 82, 90, 98, 120, 144. *See United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 676 (9th Cir. 2018).

**E. The Complaint adequately alleges a common law claim of unjust enrichment.**

A claim of common law unjust enrichment requires the United States to plead that Holcomb received a benefit from the United States, retained and appreciated the benefit, and that further retention of the benefit would be unjust. *See United States v. Bellecci*, 2008

WL 802367, at *6 (E.D. Cal. Mar. 26, 2008) (collecting cases). Here, the Complaint alleges that Holcomb received PPP loan funds that flowed from the PPP loans that the Gold Flora Companies improperly obtained and that her retention of those funds would be unjust. The extent of funds to which Holcomb has been unjustly enriched will be a matter for discovery.

**F. Venue Lies in This District.**

An action under the FCA "may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by [the FCA] occurred." 31 U.S.C. § 3732(a). While "the plaintiff has the burden of establishing venue on a Rule 12(b)(3) motion to dismiss, *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979), . . . a court deciding a Rule 12(b)(3) motion must draw all reasonable inferences and resolve all factual disputes in the plaintiff's favor." *Deblanco v. Persolve, LLC*, No. 12-CV-2725-H-DHB, 2013 WL 12108659, at *1 (S.D. Cal. Feb. 27, 2013) (citing *Allstar Mktg. Grp, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009)).

Holcomb contends that venue lies in the Central District of California, but where, as here, venue lies in multiple districts, Rule 12(b)(3) does not provide a basis for dismissal or transfer. Nor does Holcomb seek transfer for the convenience of parties and witnesses, and in the interests of justice, under 28 U.S.C. § 1404(a).

The alleged facts easily satisfy Section 3732(a)'s "transacts business" prong of and establish that this district is a proper venue.[6] Compl. ¶¶ 7, 11, 16-19, 51-53. Those alleged facts include that among the Gold Flora Companies that Holcomb operated, GF Distribution LLC served as Gold Flora LLC's distribution arm and held a distributor license for adult-use (recreational), commercial, and medicinal cannabis in the State of California, including for cannabis products sold in this district; Gold Flora Partners LLC held a retail license for the sale of adult-use (recreational) cannabis in the State of California, including for cannabis products sold in this district; and Black Lion Farms LLC held an adult-use (recreational)

---

[6] While venue can also lie here under the "found" or "proscribed acts" prongs, the United States submits that the "transacts business" prong is the most readily established.

cannabis cultivation license in the State of California, including for cannabis products sold in this district. *Id.* at ¶¶ 16-19, 51-52. In addition, Holcomb and the Gold Flora Companies arranged to have their cannabis products sold in this district, and invited the public to find their cannabis products at retail locations throughout California, including at least four locations in San Diego County identified in the Complaint. *Id.* at ¶¶ 16, 53.

In deciding a Rule 12(b)(3) motion, a court may consider supplemental written materials and facts outside of the pleadings such that venue issues are ordinarily resolved on affidavits and declarations. *Persolve*, 2013 WL 12108659, at *1. But Holcomb does not submit any admissible materials or evidence that negate the factual allegations in the Complaint that venue is proper in this district. *See Sloan v. Pfizer, Inc.*, 2008 WL 4167083, at *2 (N.D. Cal. Sept. 8, 2008)(declarations of facts supporting or opposing a motion to transfer venue "must be admissible evidence of the facts involved").

Holcomb offers only unsubstantiated statements, without any citation or supporting declaration or evidence, that she is rarely present in this district and does not conduct business in this district.[7] ECF 28-1 at 8:25. She further asserts that ["t]here is no evidence that Holcomb engaged in any continuous, substantial, or non-episodic local activity"—again, an assertion that is made without any citation to evidence and does not negate the factual allegations of the Complaint nor shift any burden to the United States. Perhaps not surprising given the extent of the Gold Flora Companies' and her business activity in this district, but it is a telling deficiency that Holcomb argues against venue in this district without submitting her own declaration under penalty of perjury that sets forth a lack of any connection whatsoever between either her operation of the Gold Flora Companies or her other business interests and this district.

Holcomb only offers the declaration of a former CFO of the Gold Flora Companies,

[7] Even if such an assertion were to be accepted as true without substantiation, it is unclear what Holcomb means when she asserts that she is "rarely" in this district—particularly given the Gold Flora Companies' business operations in this district—an assertion from which it cannot be fairly concluded that Holcomb cannot be found in this district or does not transact business in this district.

Marshall Minor, but as detailed in the United States' objection thereto, it is so lacking in foundation and personal knowledge and otherwise objectionable that it is inadmissible. The declaration does not even state when Mr. Minor was CFO, which the United States suspects was after the events upon which he comments. But even if the Court were to accept Mr. Minor's declaration, case law in this circuit holds that the business activity described therein and in the Complaint, i.e., that the Gold Flora Companies chose to do business in this district by entering into transactions with multiple retail dispensaries in San Diego County and arranging to have their cannabis products held for sale in San Diego County, constitutes transacting business in this district.

In *United States v. Get Eng'g Corp.*, 2019 WL 4452968, at *2 (C.D. Cal. June 20, 2019), a *qui tam* relator filed suit in the Central District of California ("CDCA") against GET Engineering ("GET"), a business located in the Southern District of California ("SDCA"), and GET's individual owners and managing officers. The defendants moved to transfer venue to SDCA under 28 U.S.C. § 1406(a) on the basis that there was no venue in CDCA, or alternatively, for discretionary transfer for the convenience of parties and witnesses, and in the interests of justice, under § 1404(a). All individual defendants resided in SDCA and GET operated exclusively out of SDCA. GET contracted with government entities in CDCA and shipped products to the CDCA pursuant to those contracts.

The *GET* defendants argued that such "nominal commercial contact" with CDCA did not amount to "transacting business" there. The court disagreed, holding that "the FCA's venue provision is broad enough to capture even such limited contact." *Get Eng'g Corp.*, 2019 WL 4452968, at *2 (citing *United States v. Hobbs*, 2018 WL 1368325, at *3 (N.D. W. Va. Mar. 16, 2018) ("a plaintiff satisfies the FCA venue provision if it is alleged that a defendant entered into business agreements in the district or visited the district to work on business projects.")). The *GET* court further observed that "[i]ndeed, it is well-established that the words 'transacts business' in federal venue statutes cover even minimal commercial activity." *Id.*

The Clayton Act's venue provision closely mirrors the FCA's venue provision. *See*

15 U.S.C § 22 (venue is proper "in any district wherein [a defendant] may be found or transacts business"). Discussing the meaning of "transacts business" in 15 U.S.C. § 22, the GET court reinforced that "hair-splitting legal technicalities" should be avoided. "A corporation can transact business without ever entering a state; without having salesmen or agents present there. Artful arrangements such as the geography of minute incidents of contracting (e.g., designation of place of title transfer) do not alter the substantive of relationships, If the corporation in a practical business sense has business within the state it may be said to be in business there." *Get Eng'g Corp.*, 2019 WL 4452968 at *2-3 (quoting *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 953 (9th Cir. 1958)..

The "low bar" of transacting business "does not demand that a corporation be engaged in a continuous course of business within the forum state. One act within, or with regard to, the forum state may be enough to constitute the 'transaction of business required' to confer venue." *Id.* (quoting *Pac. Tobacco Corp. v. Am. Tobacco Co.*, 338 F. Supp. 842, 844 (D. Or. 1972)).

The *GET* court concluded that venue was proper in CDCA because at least one defendant transacted business there within the meaning of the FCA. *Id.* at *3. ("[I]t is of no moment whether any Defendant actually set foot in the Central District in furtherance of the contracts, as merely entering contracts with counterparties in the Central District and shipping goods to the Central District are sufficient transactions of business in the Central District for purposes of venue under 3732(a).").[8]

Holcomb's reliance on *Williams v. Canon*, 32 F. Supp. 376 (C.D. Cal. 1977) is misplaced. That case involved whether there was proper venue in CDCA in an antitrust action against a Japanese parent company based on the business transactions of its subsidiary in that district. The court concluded that venue did not lie in CDCA, but that was because the Japanese parent corporation did not control and manage its American

[8] After finding that venue was proper in CDCA, the *GET* court ordered the case transferred to SDCA but under § 1404(a) in the interests of justice and convenience of the parties and witnesses. There is no request for transfer under § 1404(a) here.

subsidiaries to the extent that the parent could be said to be transacting business in the CDCA for purposes of the antitrust venue statute.

As to any potential argument about the timing of "transacts business," the Ninth Circuit has directly addressed the temporal issue regarding the Clayton Act, which, as discussed above, parallels the FCA's "transacts business" prong. In *Eastland Const. Co. v. Keasbey & Mattison Co.*, 358 F.2d 777, 778 (9th Cir. 1966), a defendant sold their business, located in the Northern District of California, but had not done business in the district since. The court found that, given the legislative intent to provide broader and more effective relief under the Clayton Act, venue is proper in any district in which the corporate defendant was transacting business when the cause of action accrued. *See id.* at 780. *See also Lee v. Ply*Gem Indus., Inc.*, 593 F.2d 1266, 1271-73 (D.C. Cir. 1979) (where the business activities are bound up in the alleged violating conduct, the "temporal frame of reference . . . is the point at which the cause of action arises, not the date the suit commenced," and rejecting as a "hyperliteral [sic] interpretation" where the defendants argued that because they sold their last shipment of products in the proposed venue a month before suit commenced, venue was improper in that forum because "transacts" under the Clayton Act is in the present tense and they were not transacting business at the time the action commenced); *see also Lindh v. Murphy*, 521 U.S. 320, 331 (1997) (observing hat a verb in the present tense can and should encompass both past and present conduct where it is not generally plausible that Congress intended it to be strictly construed).

In addition, prior to the 1986 amendments to the FCA, venue in FCA actions was proper only where a defendant could be "found." S. REP. 99-345, 32, 1986 U.S.C.C.A.N. 5266, 5297. In order to effectuate any meaning to the addition of "transacts business," at the very least it must mean something more than to be "found" in a district. *See United States v. Universal Fruits & Vegetable Corp.*, 3670 F.3d 829, 836 n. 13 (9th Cir. 2004) (suggesting that 31 U.S.C. § 3732(a) brings venue options under the FCA into line with the generous venue options available within the Court of International Trade, 28 U.S.C. §§1851-1585).

Here, the Complaint alleges facts that Holcomb and the Gold Flora Companies consistently engaged in business within this district when the proscribed acts were committed, even if SDCA was not the principal place of business.

Congress wrote the FCA expansively, intending "to reach all types of fraud, without qualification, that might result in financial loss to the Government." *Chandler*, 538 U.S. 129. Congress tended for the FCA and its amendments "to strengthen the Government's hand in fighting false claims." *Id.* at 133-34. This Court should not construe the FCA's venue provision so narrowly that it frustrates Congress's intent.

**G. Any dismissal should be with leave to amend.**

For the reasons above, the Court should deny Holcomb's Motion in its entirety. However, should the Court find any pleading defect, it should grant the United States leave to amend its Complaint. Rule 15 requires that leave to amend "shall be freely given," and the Ninth Circuit has emphasized that this must be applied "with extreme liberality" towards amendment. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (reversing denial of leave to replead, even after "three bites at the apple"). Further, "prejudice is the touchstone of the inquiry under rule 15(a)," *id.* at 1052, and Holcomb makes no such showing in her Motion.

DATED: September 28, 2026

Respectfully submitted,

ADAM GORDON
United States Attorney

/s/ *Joseph P. Price, Jr.*
Joseph P. Price Jr.
Assistant United States Attorney

Attorneys for Plaintiff
United States of America